## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **DARIN WHITE** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. 4:19-cv-3244** |
| | § | |
| | § | |
| **ROYAL CUP, INC.** | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND

**TO THE HONORABLE JUDGE OF SAID COURT:**

NOW COMES **DARIN WHITE**, hereafter referred to as "Mr. White" or "Plaintiff," and files this, his Original Complaint and Jury Demand against Defendant Royal Cup, Inc. ("Royal Cup" or "Defendant"). Mr. White alleges violations of The Texas Commission on Human Rights Act, Title VII of the Civil Rights Act of 1964, The Americans with Disabilities Act of 1990 (ADA) as Amended, The Age Discrimination in Employment Act (ADEA), and the Family and Medical Leave Act (FMLA). For causes of action, Mr. White would show this Court as follows:

## I.
## PARTIES

1. Plaintiff **DARIN WHITE** is a resident of Houston, Harris County, Texas.

2. Defendant, **ROYAL CUP, INC.**, is a Delaware Corporation doing business in Texas. Citation may be served upon Defendant by delivery of citation to: 1999 Bryan St., Ste. 900 Dallas, TX 75201-3136. A waiver of service has been requested.

## II.
## JURISDICTION AND VENUE

3. This Court has jurisdiction to hear the merits of White's claims under 28 U.S.C. §1331 as they arise under federal statutes, specifically Title VII of the Civil Rights Act of 1964,

1

The Americans with Disabilities Act as amended, and The Family and Medical Leave Act.

4.     This Court has supplemental jurisdiction over Plaintiff's Texas Commission on Human Rights Act claims under 28 U.S.C. § 1367.

5.     All the acts alleged herein occurred in Harris County, Texas, within the Jurisdiction of the Southern District of Texas, Houston Division.

6.     Venue in this district and division is proper under 28 U.S.C. § 1391(b)(2).

7.     At the time of filing, damages are within the jurisdictional limits of the court.

## III.
## MISNOMER / MISIDENTIFICATION

8.     In the event that any parties are misnamed or are not included herein, it is Plaintiff's contention that such was a "misidentification," "misnomer" and/or such parties are/were "alter egos" of parties named herein.  Alternatively, Plaintiff contends that such "corporate veils" should be pierced to hold such parties properly included in the interest of justice.

## IV.
## FACTS

9.     Darin White was hired by Royal Cup as a Territory Manager in April 2015.

10.    Royal Cup provides coffee, supplies, and related equipment to its customers.

11.    Mr. White was responsible for delivering Royal Cup's products to customers, getting existing customers to buy more Royal Cup products, and finding new customers.

12.    In 2017 he was awarded a certificate of achievement and was made a member of Defendant's President's Club for sales excellence because he was the #3 in sales in the country. As a result, he was awarded a trip to Canada in October 2017 to attend the Company's award ceremony.

13.     During his employment with Royal Cup, Mr. White had knee surgery and used 2 ½ months of FMLA leave as a result.

14.     Upon his return, Mr. White was told by his manager Griffin Cooper that other Managers at Royal Cup had told him that they did not want White back at work because of his injury and his age.  White told Eric Green, another manager, about the incident.

15.     On or about January 22, 2018, Will Kent became Mr. White's new manager.

16.     On or about February 19, 2018, Kent came to Mr. White and told Mr. White that his route was not being run properly.  When Mr. White informed Kent that he was running the route as he was trained by the former manager Mr. Cooper, Kent told him that none of the drivers were running their routes correctly and that he would be speaking with all of them.

17.     However, when Mr. White asked the other drivers if Kent said anything to them about issues with the routes, they told him that Kent had not said anything to them about the routes being a problem.

18.     On or about February 26, 2018, White had a meeting with Kent as well as Kathryn the warehouse manager.  At that meeting Kent told White that the warehouse manager had problems with him.  However, prior to that meeting no one had made White aware of any issues, nor had White received any write-ups criticizing his work.

19.     Later that day, Kent had a meeting with White and another route driver.  Kent told them that it would be easier to just terminate their employment.

20.     On or about March 1, 2018 Kent sent an email to White and a Hispanic employee named Juan saying he was not happy with them.  He did not make the same complaint about a co-worker Nathan, who was Caucasian.

21.     On or about March 9, 2018, White had a conversation with Cooper and told Cooper how Kent was treating him.  White expressed concern that Kent was trying to fire him and Cooper agreed.

22.     On or about March 12, 2018, White got an email from Kent reprimanding white regarding his D.O.T. physical, however, White had already scheduled the physical.

23.     Kent also started to tell White about a water delivery that White had already finished.  Kent told White that he could see a trend because White didn't answer him the way he wanted.   White interpreted Kent's comments as racial because he was not making similar complaints about non-African-American employees.

24.     On or about April 4, 2018, White went to work despite severe back pain.  He completed a scheduled delivery but went to the hospital around 2:30 p.m. because his pain was so severe that he could not continue to work.

25.     The doctor at the hospital diagnosed White with sciatic nerve damage and referred him to a specialist.  Also on April 4th, White sent his doctor note, which indicated that he needed to be off work for three days, to Cindy in HR and to Kent.

26.     Sciatic nerve damage causes severe radiating back pain and interferes with major life activities including lifting and sitting.

27.     On or about April 5 of 2018 Plaintiff's supervisor Will Kent called him to ask for more information about his medical condition, even though White had sent him the doctor's note. Kent wanted to know what White's diagnosis was and how long he would be off work.  Mr. White complied and sent an email to Kent and to Human Resources disclosing the additional medical information.

28.     Mr. White went out on FMLA leave for his condition and received treatment.

29.     Upon his return from FMLA leave on July 18, 2018, Mr. White was called into a meeting with Kent.  Kent told him that during the time he was off on medical leave that they had received several customer complaints about White providing poor service, and as a result he was being terminated.

30.     White asked to see the customer complaints but Kent refused.

31.     Mr. White was informed, and believes, and therefore asserts that he was told by other employees of Defendant that his former clients told them that they were happy with the service that Plaintiff provided.

32.     Mr. White was further informed, and believes, and therefore asserts that he was told by other employees of Defendant that they were informed by management that Mr. White was terminated so that someone younger and healthier could do the job.

33.     Mr. White is also aware that other African-American employees were terminated by Kent during the same time period that he was.  These employees were also over 40.

## V.
## RACE DISCRIMINATION UNDER CHAPTER 21 OF THE TEXAS LABOR CODE AND TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

34.     The evidence will show that:

(1) Plaintiff was within the category of persons protected by Title VII (African-American);

(2)  Plaintiff was qualified for his position;

(3) Plaintiff suffered an adverse employment action in that he was  terminated and;

(4) The circumstances arising raise an inference of race discrimination.

35.     The evidence will also show that Defendant's reason(s) for taking adverse employment actions against Plaintiff's employment are pretextual.

36.     The evidence will further demonstrate that other non-African American employees were treated more favorably than Mr. White.

## VI.
## VIOLATIONS OF THE FAMILY AND MEDICAL LEAVE ACT

37.     Plaintiff has satisfied all jurisdictional prerequisites in connection with his claim under the Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 *et. seq.*

38.     Defendant is an "employer" as defined by the FMLA in 29 U.S.C. § 2611(4).

39.     Defendant employed, and continues to employ, fifty or more persons at, or within a seventy-five (75) mile radius of, the location where Plaintiff worked.  Thus it is believed Defendant was covered by the FMLA.

40.     During the time that Plaintiff was employed by Defendant, he was an "eligible employee" as defined by the FMLA in 29 U.S.C. § 2611(2).

41.     While Plaintiff was employed by Defendant, Plaintiff had an illness or medical condition that can be defined as a "serious health condition" under the FMLA as outlined in 29 U.S.C. § 2611(11).  Plaintiff was entitled to medical leave for his serious health condition as provided for in the FMLA (in 29 U.S.C. § 2612(a)(1)(D)).

42.     Defendant retaliated against Plaintiff for taking or requesting this medical leave to care for his serious health condition.

43.     As a result of Defendant's violations of the FMLA, Plaintiff has suffered actual damages in the form of lost income and benefits (past and future), in an amount that has not yet been fully established, but which will be provided at time of trial.

## VII.
## DISABILITY DISCRIMINATION AND RETALIATION UNDER CHAPTER 21 OF THE TEXAS LABOR CODE AND THE AMERICANS WITH DISABILITIES ACT, AS AMENDED

44.    The evidence will show that:

(1) Plaintiff was disabled (actually disabled and/or "regarded as" or "perceived as" disabled due to his disabilities, sciatic nerve damage, bulging/herniated discs);

(2) Plaintiff was qualified for his position;

(3) Plaintiff suffered an adverse employment action in that he was terminated; and,

(4) The circumstances arising raise an inference of disability discrimination.

45.    The evidence will also show that Defendant's reason(s) for taking adverse employment actions against Plaintiff's employment are pretextual.

46.    The evidence will further demonstrate that other employees without disabilities and/or that were not regarded or perceived as disabled were treated more favorably than Mr. White

47.    Mr. White had previously been told that his employer did not like that he had had an injury, and he was terminated immediately upon his return from leave for alleged disciplinary issues he had never been told about.

48.    Following his termination he was informed that his employer had wanted to replace him with someone younger and healthier.

## VIII.
## AGE DISCRIMINATION AND RETALIATION UNDER CHAPTER 21 OF THE TEXAS LABOR CODE AND THE AGE DISCRIMINATION IN EMPLOYMENT ACT

49.    The evidence will show that:

(1) Plaintiff was within the category of persons protected by the ADEA (53 years old on date of termination);

(2) Plaintiff was qualified for his position;

(3) Plaintiff suffered an adverse employment action in that he was terminated and;

(4) The circumstances arising raise an inference of age discrimination.

50.     The evidence will also show that Defendant's reason(s) for taking adverse employment actions against Plaintiff's employment are pretextual.

51.     Plaintiff was fired upon his return from leave for alleged customer complaints he had never been told about before.

52.     The evidence will further demonstrate that other younger employees were treated more favorably than Mr. White.

53.     During his employment, Plaintiff was told that managers had concerns about his age.

54.     Following his termination he was informed that his employer had wanted to replace him with someone younger and healthier.

## IX.
## RESPONDEAT SUPERIOR

55.     Employees involved in the discrimination described herein were at all times employees, agents, or representatives of the Defendant and were at all times acting in the course and scope of that employment.  Accordingly, Defendant is liable for such conduct under the doctrine of Respondeat Superior.

## X.
## DAMAGES

56.     Plaintiff alleges that as a direct and proximate result of the conduct and/or omissions on the part of the Defendant, he is entitled to recover at least the following legal damages:

    a.  Lost wages, past and future;

    b.  Compensatory Damages, including Mental Anguish, emotional pain, suffering,

inconvenience, mental anguish, and loss of enjoyment of life suffered in the past, and which, in all reasonable probability, which will be suffered in the future;

c.  Pecuniary losses; and punitive damages

d.  Reasonable attorney fees, expert fees and costs.

e.  Based upon the above enumerated damages, the Plaintiff pleads for actual damages for the above damage elements in an amount the jury deems reasonable.

## XI.
## ADMINISTRATIVE FILINGS

57.  Plaintiff filed his original verified complaint with the Equal Employment Opportunity Commission and the Texas Workforce Commission Civil Rights Division dually alleging that the Defendant had committed and unlawful employment action against Plaintiff.

58.  Plaintiff subsequently filed an amended charge

59.  Thereafter, Plaintiff received a "Notice of Suit" from the EEOC on both charges, giving Plaintiff notice of his right to sue Defendant within 90 days of its receipt, attached hereto as **Exhibit "A"**.  Plaintiff has timely filed this Plaintiff's Original Complaint.

## XII.
## ATTORNEY FEES

60.  Defendant's conduct as described in this petition and the resulting damage and loss to Plaintiff has necessitated Plaintiff's retaining counsel.  Therefore, Plaintiff seeks all reasonable and necessary attorney fees in this case which would include at least the following:

a.  Preparation and trial of the claim, in an amount the jury deems reasonable;

b.  Post-trial, pre-appeal legal services, in an amount the jury deems reasonable;

c.  An appeal to the Court of Appeals, in an amount the jury deems reasonable;

d.  Making or responding to an Application for Writ of Error to the Supreme Court,

and attorneys' fees in the event that application for Writ of Error is granted, in an amount the jury deems reasonable; and

e.   Post-judgment discovery and collection in the event execution on the judgment is necessary, in an amount the jury deems reasonable.

## XIII.
## JURY DEMAND

61.   Plaintiff further demands a trial by jury.  A jury fee has been tendered.

## XIV.
## PRAYER FOR RELIEF

WHEREFORE, Darin White requests Defendant Royal Cup, Inc. be cited to appear and answer, and that on final trial, White have judgment against Royal Cup as follows:

1.   judgment against Royal Cup for White's actual damages, including lost wages and benefits (both front and back pay);

2.   judgment against Royal Cup for compensatory damages in the maximum amount allowed by law and for punitive damages;

3.   pre-judgment and post-judgment interest at the maximum allowed by law;

4.   costs of suit, including attorneys' fees; and

6.   A trial by jury and such other and further relief, both at law and in equity, to which White may be justly entitled.

Respectfully Submitted,

**PONCIO LAW OFFICES**
**A Professional Corporation**
**5410 Fredericksburg Road, Suite 109**
**San Antonio, Texas 78229-3550**
**Telephone: (210) 212-7979**
**Facsimile: (210) 212-5880**

BY: */s/ Alan Braun*_____

        **ADAM PONCIO**
        **STATE BAR NO. 16109800**
        **Southern District ID. No 194847**
        **ALAN BRAUN**
        **STATE BAR NO. 24054488**
        **Southern District ID. No 1428056**


        **DARIUS KHOSRAVIAN**
        **DK LAW**
        **STATE BAR NO. 24085414**
        **S.D. ID No. 3399720**
        **Darius@thedklawfirm.com**
        **2245 Texas Drive, Suite 300**
        **Sugar Land, TX 77479**
        **Telephone: (281) 402-8856**
        **Facsimile: (281)-408-4847**

**ATTORNEYS FOR PLAINTIFF**

# EXHIBIT A

EEOC Form 161 (11/16)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Darin White<br>15511 Tuckerton Road<br># 724<br>Houston, TX 77095 | From: | Houston District Office<br>Mickey Leland Building<br>1919 Smith Street, 7th Floor<br>Houston, TX 77002 |
|---|---|---|---|

| | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a)) | |
|---|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 460-2018-05287 | Vernon M. Gardner, Jr.,<br>Investigator | (713) 651-4938 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

- [ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.
- [ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.
- [ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.
- [ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge
- [X] The EEOC issues the following determination:  Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge.
- [ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.
- [ ] Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that backpay due for any violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

Enclosures(s)

Rayford O. Irvin,
District Director

5/30/2019
*(Date Mailed)*

cc:

Mark S. Kirkendall
VP HR
ROYAL CUP INC
160 Cleage Drive
Birmingham, AL 35217

Darius Khosravian
DK LAW PLLC
2245 TEXAS DRIVE  # 300
Sugar Land, TX 77479

Warren B. Lightfoot
Maynard Cooper & Gale, P.C.
1901 6th Avenue North
2400 Regions Harbert Plaza
Birmingham, AL 35203

TWC- Civil Rights Division
101 E. 15th Street, Rm. 144-T
Austin, TX 78778-0001